# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-2264

CAROL SIKINA,
Appellant

v.

POSTMASTER GENERAL OF THE UNITED STATES
_____

On Appeal from the U.S. District Court, W.D. Pa.
Judge Marilyn J. Horan, No. 2:23-cv-01111

Before: SHWARTZ, PHIPPS, and MCKEE, *Circuit Judges*
Submitted: July 2, 2026; Filed: July 20, 2026

_____

NONPRECEDENTIAL OPINION[*]

PHIPPS, *Circuit Judge*.

After a postal employee suffered a stroke, she began taking leave under the Family Medical Leave Act. While on leave, she applied for and received Social Security Disability Insurance benefits. The leave expired, and the employee did not return to work. After several stages of progressive discipline, the Postal Service issued a notice of removal, but before the termination became effective, the employee retired.

The employee subsequently sued the Postmaster General under the Rehabilitation Act, 29 U.S.C. §§ 701–796*l*, for failing to accommodate her disability. After discovery, the Postmaster General moved for summary judgment. In opposing that motion, the employee relied on a note from one of her medical professionals that suggested she was able to perform light work and that she could have done so earlier if given the chance. The Postmaster General objected to that note, which the District Court excluded from its

_____
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

analysis before entering summary judgment in favor of the Postmaster General. The employee now appeals the exclusion of the note and the grant of summary judgment. On *de novo* review, we will affirm.

## FACTUAL BACKGROUND

In September 2007, at the age of forty-seven, Carol Sikina began working for the United States Postal Service on a part-time basis. In June 2014, she was promoted to full-time labor custodian at the Pittsburgh Network Distribution Center in Warrendale, Pennsylvania. In that position, she was responsible for sweeping the facility, cleaning the bathrooms, cutting the grass, and doing other yard work. Performing those duties required using stairs, climbing ladders, and operating a motor vehicle.

On November 5, 2021, Sikina suffered a stroke after work. She was life-flighted to a hospital, and she remained hospitalized for over a month.

A week after her discharge from the hospital, Sikina applied for Social Security Disability Insurance. In that application, Sikina swore under 42 U.S.C. § 1383a that she was unable to work:

> I became unable to work because of my disabling condition on November 5, 2021. I am still disabled.

Appl. Summ. for Disability Insurance Benefits (App. 269–70).

After her stroke, Sikina was able to keep her job with the Postal Service by using FMLA leave. But her leave expired on March 29, 2022, and consistent with her representation on her SSDI application, she did not return to work afterwards. And in May, she started receiving SSDI benefits.

Sikina's absence prompted the Postal Service to begin progressive discipline against her. In response, Sikina requested a Pre-Disciplinary Investigation with the Postal Service and explained that "she could not return to work without her doctor's approval." Opening

2

Br. 19. Sikina alleges that during the investigation, she informed the Postal Service representatives that she could possibly return if accommodated with light duty work that did not involve navigating steps. *See* Sikina Dep. 34:10–11 (App. 369).

On June 30, 2022, the Postal Service notified her that it would suspend her for seven days. After that development, and in the face of additional progressive discipline, Sikina provided more support for her ongoing disability, and she also requested an accommodation. For support, she submitted a letter from her treating nurse practitioner recommending that she not return to work for at least a year:

> Carol J Sikina has been under my care from 11/5/21 to present. She has followed up in this clinic twice and will continue to follow up for management and care for a neurological condition. At this time, it is recommended Carol does not return to work and this will be evaluated at her next exam visit in July 2023.

Letter from Bethanne McCabe, CRNP, UPMC Neurological Institute – Mercy, to USPS (July 18, 2022) (App. 267). As far as the accommodation, Sikina's attorney faxed the Postal Service a request for the involvement of the "Accommodation Committee and H.R." in her case. Facsimile from Neal Sanders, Attorney for Carol Sikina, to USPS HR (July 20, 2022) (App. 383). Sikina later provided additional support in the form of a doctor's note opining that she should not return to work for at least three months:

> Carol Sikina is undergoing work up and optimization of deficits related to her intracerebral hemorrhage which began 11/6/21. She should remain off work until approximately October 2022[,] at which time she will need to follow up with rehabilitation clinic for reevaluation and return to work recommendations[.] She will need to demonstrate compliance with her rehabilitation plan of care.

Letter from Dr. Kali A. Webb, DO, UPMC Department of Physical Medicine and Rehabilitation, to USPS (July 22, 2022) (App. 268).

Despite the two notes explaining that her absence from work was for medical reasons, the Postal Service did not grant the accommodation request; instead, it proceeded

3

to the next stages of progressive discipline. On August 2, it issued a notice of a fourteen-day suspension. On September 14, after Sikina had missed 880 hours of work, the Postal Service informed her that she "w[ould] be removed from the Postal Service no sooner than 30 days from the date of issuance." Notice of Removal (App. 199). On September 22, at the age of sixty-two, Sikina retired before her termination took effect.

In October, Sikina submitted a formal complaint through the Postal Service's administrative grievance system, claiming, among other things, the wrongful denial of her request for an accommodation. In a final decision issued on March 23, 2023, the Postal Service determined that Sikina had "not established she was denied an accommodation that would allow her to perform the duties of the position without undue hardship to the agency," and, without that or any other meritorious claim, closed her case. Final Agency Decision 1, 19–21 (App. 28, 46–48).

### PROCEDURAL HISTORY

On June 16, 2023, Sikina sued the Postmaster General under the Rehabilitation Act for failure to accommodate her disability. In discovery, during her deposition, Sikina testified that she had been formally cleared for light duty work in 2023 and that she may have been able to return to work earlier if given the opportunity. In support of her testimony, after discovery closed, Sikina produced a second note from her treating nurse practitioner dated July 1, 2024, that opined that Sikina was capable of performing light work:

> The patient can work light duty only and could have worked light duty had she been given that opportunity.

Letter from Bethanne McCabe, CRNP, UPMC Neurological Institute – Mercy (July 1, 2024) (App. 287).

4

The Postmaster General moved for summary judgment on the ground, among others, that Sikina had not put forth sufficient evidence to demonstrate that she was a 'qualified individual' under the Rehabilitation Act. In connection with that motion, the Postmaster General also moved to exclude the note from July 1, 2024, from her treating nurse practitioner on relevancy and hearsay grounds.

In exercising subject-matter jurisdiction over the case, *see* 28 U.S.C. § 1331, the District Court granted both motions, *Sikina v. DeJoy*, 2025 WL 1756716, at *1 (W.D. Pa. June 25, 2025). Through a timely notice of appeal, Sikina invoked this Court's appellate jurisdiction, *see* 28 U.S.C. § 1291, and she now challenges both rulings.

### DISCUSSION

At summary judgment, the moving party may succeed by demonstrating that the nonmoving party has not made "a showing sufficient to establish the existence of an element essential to that party's case . . . *on which that party will bear the burden of proof at trial.*" *Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024) (alteration in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). And here, the parties agree that for Sikina to succeed on her Rehabilitation Act claim, she must demonstrate that she was a qualified individual with a disability, meaning that she was capable of performing the essential functions of the job, with or without reasonable accommodation. *See* 29 U.S.C. § 794(a); *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979) (explaining that "[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap"). The question presented in this appeal is whether the Postmaster General has established that Sikina will be unable to prove at trial that she was a qualified individual with a disability after her stroke.

5

Two pieces of evidence support the proposition that between the date of her stroke (November 5, 2021) and the date of her resignation (September 22, 2022), Sikina was a qualified individual with a disability. The first is her statement in May 2022 that she believed she could possibly return if accommodated with light duty work that did not involve navigating steps. The second, which comes subject to objections by the Postmaster General, is the note from Sikina's treating nurse practitioner dated July 1, 2024, opining that she could perform light work and could have done so had she received the opportunity.

By contrast, there are several pieces of evidence indicating that Sikina was not a qualified individual during the relevant period. She applied for and received SSDI benefits on the representation that she was "unable to work because of [her] disabling condition." Appl. Summ. for Disability Insurance Benefits (App. 269–70). *See generally* 42 U.S.C. § 423(d)(2)(A) (setting as one of the criteria for SSDI benefits not merely the inability to do previous work but also the inability to "engage in any other kind of substantial gainful work which exists in the national economy"). Additionally, in the progressive discipline process, she told the Postal Service that "she could not return to work without her doctor's approval." Opening Br. 19. There are also the notes she submitted from medical professionals in July 2022, which both opined that she was presently unable to return to work and could not do so for time periods (at least three months and at least one year) that extended beyond the date of the notice of termination in September 2022.

Given the evidence submitted, this case has no business going to a jury. Even assuming that the July 2024 note from her treating nurse practitioner could be considered over the Postmaster General's objections, Sikina's evidence has no chance of overcoming the contrary evidence, which is overwhelming. She applied for SSDI benefits on the representation that she was unable to work, received those benefits, told the Postal Service

she could not return to work, and had submitted notes from two separate medical professionals of her choosing, which both opined that she could not return to work for at least three additional months. In short, because "'the mere existence of a scintilla of evidence' favoring the non-moving party will not prevent summary judgment," the District Court did not err in granting summary judgment to the Postmaster General. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## CONCLUSION

For these reasons, it is not necessary to address the evidentiary challenges Sikina raises to the District Court's exclusion of the July 2024 note from her treating nurse practitioner, and we will affirm the judgment in favor of the Postmaster General.